Adam BAKER et al., Plaintiffs,

v.

CITY OF ST. PETERSBURG, a Municipal corporation, Lynn Andrews, City Manager, and Harold Smith, Chief of Police Department, Defendants.

No. 65–148 Civ.·T.

United States District Court
M. D. Florida,
Tampa Division.

March 31, 1966.

James B. Sanderlin, of White, Peterman & Sanderlin, St. Petersburg, Fla., for plaintiffs. .

Harry I. Young, B. Edwin Johnson, St. Petersburg, Fla., for defendants.

LIEB, District Judge.

This cause came on to be heard upon a complaint filed by the plaintiffs herein and the defendants' answer thereto, testimony having been taken and documentary evidence introduced, and arguments of counsel being considered; the Court, being otherwise fully advised in the premises, makes the following findings of fact and conclusions of law:

FINDINGS OF FACT

1. That the City of St. Petersburg, Florida, a municipal corporation, operates a Police Department which is divided into the following: Uniform, Detective and Service Divisions. These divisions are further divided into smaller units of police organization such as a Traffic Bureau, Records and Identification Bureau, Vice Squad and so forth.

2. That the City of St. Petersburg Police Department employs negro police officers and has done so since 1950. There are currently 254 police officers employed by the City of St. Petersburg and of that number 14 are negro.

3. That application for employment to the Police Department is made to the Civil Service Commission, whereupon applicants of both races are given a mental and physical examination and must have a passing grade of 70 to be appointed a probationary police officer; that the

Civil Service Commission is composed of three members appointed by the City Council; and that the administrative duties are carried on by an Examiner, who gives both the preliminary examination for employment and promotional examinations for sergeant, lieutenant and captain positions without knowing whose paper is being examined.

4. That the 14 negro police officers are assigned as follows: Two negro police officers are assigned to the Detective Division, two are assigned to the Service Division (one in Records and Identification and the other in the Service Administrator's Office), and one negro police sergeant is assigned to the Uniform Division. The remaining negro patrolmen are assigned to the Uniform Division, working as patrolmen currently, but have been assigned to the Traffic Bureau and temporarily to the Radio Room. The negroes assigned to the Detective Division and the negro police sergeant are not named plaintiffs in this action.

5. That the City of St. Petersburg has been divided into 16 zones for the purpose of effective police patrol throughout the City. Zones 12 and 13 overlap and comprise primarily the negro community, and other zones overlap for added police protection. The purpose of dividing the City into zones is to provide each zone with a patrol car and each zone has approximately the same work-load or complaint-load as any other zone, although some zones are geographically larger than others. The Court finds that zoning the City, and geographically zoning Zone 13, was not for the purpose of discrimination but for the purpose of police protection and enforcement. The negro patrolmen work primarily in Zone 13 in shifts, working in patrol cars as well as walking a beat. They are charged with the duty of arresting anyone who violates a City ordinance or State law anywhere in the entire City, their duty being the same as the duty of any other patrolman employed by the City.

6. That the negro officers are assigned to Zone 13 because, in the opinion of the Chief of Police, they are better able to cope with the inhabitants of that zone, who on occasion become abusive and aggressive toward police officers during a disturbance; and, further, that they are able to communicate with the inhabitants of the negro area better than white officers and are able to identify negroes and investigate criminal activities in that zone more effectively than white officers. That the Court finds that the assignment of negro police officers to the predominantly negro Zone 13 was not done for the purpose of discrimination but for the purpose of effective administration.

7. That the responsibility for the operation of the Police Department is placed on the Chief of Police and on the City Manager, who is charged by the City Council with the administrative responsibilities of the City. That the Chief of Police, being charged with that duty, must provide the most effective and efficient police administration for the taxpayers and inhabitants of the City.

8. That currently the City of St. Petersburg Police Department is understaffed and has authority to employ 14 additional police officers; and that the Chief of Police has actively attempted to recruit both white and negro police officers to bring the Police Department up to full strength. That Zone 13, as all the other zones, is not over-policed but is, in fact, under-patrolled.

9. That the negro patrol officers have not been denied the privilege of applying for employment or advancement in the Police Department by the Civil Service Commission or the defendants but have, in fact, not availed themselves of educational courses offered by the St. Petersburg Junior College nor have all the eligible negro patrolmen taken the promotional examination for advancement. That assignments in other zones of the City, and work assignments in the various bureaus under the three divisions, do not affect the ability to be promoted to higher rank in the Police Department.

10. That there is no discrimination in the operation of the Locker Room, in which the negro patrolmen are assigned

locker space in one aisle among white patrolmen; that the wash room, shower, drinking fountain and lunch counter facilities are available to the negro police officers; that said facilities are not segregated nor are any designations of color placed thereon and the negroes are not denied the privilege of using these facilities, but, in fact, do use these facilities with complete freedom.

## CONCLUSIONS OF LAW

1. That the Court has jurisdiction over all parties based upon the Fourteenth Amendment to the Constitution, Title 42 U.S.C.A. § 1981; and Title 28 U.S.C.A. § 1343(3).

2. That the Court concludes that the actions of the City, through its City Manager and Chief of Police, in the assignments of the negro patrolmen to a predominantly negro community in the City, the assignment of lockers in the Locker Room of the Police Building and the failure of the Chief of Police to assign work duties to plaintiffs in the various bureaus of the different divisions in the Police Department were not made in an unreasonable, arbitrary, capricious or unlawful manner; and that the City Manager and the Chief of Police, being charged with the duty of operating the Police Department in the most effective, efficient manner, are vested with wide discretion in matters affecting the management and use of their personnel.

3. That this Court will not substitute its judgment for that of the defendants in the performance of those matters within their jurisdiction unless there exists sufficient factual basis that the defendants' actions were unreasonable, arbitrary, capricious or unlawful and discriminatory with respect to the patrolmen. Brooks v. School District of City of Moberly, Mo., 8 Cir., 267 F.2d 733 (1959); Chambers v. Hendersonville City Board of Education, D.C., 245 F. Supp. 759 (1965).

4. That from the Findings of Fact and Conclusions of Law the complainants have failed to substantiate the allegations of their complaint and, therefore, there is no basis for the relief sought.

Judgment will be entered in accordance with the foregoing Findings of Fact and Conclusions of Law.